## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-61617-CIV-ROSENBAUM/HUNT

MICHAEL STEINBERG,

      Plaintiff,

v.

PATRICK R. DONAHOE, Postmaster
General, United States Postal Service,

      Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Plaintiff's Motion for Leave to File Amended Complaint [ECF No. 11] and Defendant's Motion to Dismiss [ECF No. 4]. The Court has reviewed the Motions, all supporting and opposing filings, and the record in this case, and is otherwise fully advised in the premises. For the reasons set forth below, the Court now denies Plaintiff's Motion to Amend and grants Defendant's Motion to Dismiss.

### I.  Factual Background

The following facts are taken from Plaintiff Michael Steinberg's proposed Amended Complaint [ECF No. 11-1] and related documents. Steinberg was employed by the United States Postal Service. *See* ECF No. 11-1. Steinberg, who is Jewish, alleges that from October 7, 2011, to September 17, 2012, Douglas Barksdale, the supervisor of maintenance operations at the Postal Service's South Florida packing and distribution center, discriminated against Steinberg based on

-1-

his religion.  *Id.* at ¶ 8.  More specifically, Steinberg asserts that Barksdale subjected him to offensive religion-based comments and ridicule and that he denied Steinberg premium job assignments and fringe benefits, including, among others, overtime assignments, because Steinberg was Jewish and in retaliation for Steinberg's employment-discrimination complaint against Barksdale.[1]  *Id.* at ¶ 15.

Although the first incident involving a religion-based comment against Steinberg that is alleged in the proposed Amended Complaint is asserted to have occurred on October 7, 2011, *see id.* at ¶¶ 8, 9, the proposed Amended Complaint refers to an earlier complaint that Steinberg had made that "he had been treated differently and less favorably than other employees outside of his protected class with respect to the terms and conditions of his employment.  *Id.* at ¶¶ 24-25.  As a result of administrative proceedings in connection with that complaint, the proposed Amended Complaint continues, on October 5, 2011, Barksdale learned of Steinberg's discrimination claim against him and allegedly exclaimed, "Eeew, I never had an EEO on me."  *Id.* at ¶ 25.  According to Steinberg, the following morning, on October 6, 2011, after Steinberg had made repeated requests to work overtime, Barksdale informed Steinberg that he could not work overtime "based on the pretext that Steinberg was not so entitled."  *Id.*

The next day, on October 7, 2011, Steinberg claims that Barksdale began verbally ridiculing him for his religious beliefs.  *See id.* at ¶ 8.  In particular, Steinberg identifies five instances where Barksdale purportedly made derisive, religion-based comments.  *Id.* at ¶¶ 8-13.  In the October 7, 2011, incident, the proposed Amended Complaint charges that Barksdale told Steinberg to "enjoy

---

[1] In his Original Complaint, Steinberg did not include the fact that he was specifically denied overtime assignments.  *See* ECF No. 1 ¶ 15.

his bagel" as he left for lunch. *Id.* at ¶ 9.  On December 12, 2011, Barksdale brought in hotdogs for the staff and allegedly announced that he "brought [Steinberg] Hebrew Nationals," as he was the only Jew in the 90-employee department.  *Id.* at ¶ 10.  Eight days after the hotdog comment, Steinberg avers, on December 20, 2011, Barksdale mocked a Jewish tradition surrounding Hanukkah in front of Steinberg and three other employees, stating that "[he] forgot the jelly do[ugh]nuts." *Id.* at ¶ 11.

Several months passed before the next incident. *See id.* at ¶¶ 11, 12.  On April 8, 2012, the Amended Complaint asserts, Barksdale derided a Jewish tradition surrounding Passover, asking Steinberg whether he had "read from the Haggadah at dinner." *Id.* at ¶ 12.  The final comment about which Steinberg complains allegedly happened on September 17, 2012. *Id.* at ¶ 13.  On that day, Barksdale purportedly taunted Steinberg, saying "This is your Holy New Year.  Why are you here?  Oh, Happy New Year." *Id.*  Steinberg further asserts that Barksdale made all of the alleged comments in front of Steinberg's coworkers, which caused them to laugh and caused Steinberg embarrassment and humiliation. *Id.* at ¶ 14.

Before bringing the current action, Steinberg filed an administrative complaint on September 28, 2012. *See* ECF No. 4-1 at 3;[2] *see also* ECF No. 11-1 at ¶ 5.  He then received a Notice of Right to File Individual Complaint of Discrimination on October 27, 2012, and filed a formal

---

[2] On a motion to dismiss, the court may consider documents outside the four corners of the complaint if the documents are central to the plaintiff's claims and are undisputed in terms of authenticity. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citation omitted).  All documents discussed in this Order meet those requirements.  This is particularly true where a defendant seeks to dismiss for failure to exhaust administrative remedies, as a resolution on this basis is generally not considered an adjudication on the merits. *See Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424-25 (11th Cir. 2010) (citing *Bryant v. Rich*, 530 F.3d 1368, 1374-76 (11th Cir. 2008)).

administrative complaint of discrimination with the Postal Service on October 30, 2012. ECF No. 11-1 at ¶ 5.

In the formal complaint, in response to the question asking the type of discrimination that Steinberg was alleging, Steinberg checked only the box that said "Religion." *See* ECF No. 4-1 at 1. Significantly, he did not check the box marked "Retaliation." *See id.* In addition, the formal complaint set forth the five comments described above, but it did not mention deprivation of overtime or describe any other alleged adverse employment actions allegedly taken against Steinberg on the basis of his religion. *See id.* As for the remedy that Steinberg described himself as seeking through the formal-complaint process, Steinberg wrote only, "Actual and special damages including pain and suffering and emotional distress and punitive damages." *Id.*

The Postal Service EEO dismissed the formal complaint on November 20, 2012. *Id.* at ¶ 6; *see also* ECF No. 4-1 at 3-6. In the Dismissal, the Postal Service EEO opined that Steinberg had not described any actionable harm suffered at the hands of the Postal Service, that is, he had not complained of any adverse action related to any incidents. ECF No. 4-1 at 4. In addition, the Dismissal concluded that Steinberg had untimely filed his complaint with the Postal Service's EEO because he had not complied with 29 C.F.R. § 1614.105(a)(1), which requires that a complaint be filed within 45 days of the date of the matter alleged to be discriminatory. *Id.* at 4-5. Therefore, the EEO reasoned, the comments made on October 7, 2011, December 12 and 20, 2011, and April 8, 2012, fell outside the requisite time period and were not subject to review. *Id.* As was his right, Steinberg elected to appeal the decision to the United States Equal Employment Opportunity Commission ("EEOC") and did so on about December 7, 2012. ECF No. 11-1 at ¶ 6.

The EEOC affirmed the Postal Service's decision on April 30, 2013, stating that Steinberg

-4-

had "not identified any conduct attributable to the [Postal Service] which would indicate that [he] was subjected to harassing behavior in the workplace sufficient to state a claim of hostile work environment." ECF No. 4-1 at 8; ECF No. 11-1 at ¶ 6. The EEOC decision likewise opined that Steinberg had "failed to show that he suffered harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy." *Id*. Finally, the EEOC decision noted that, "for the first time on appeal, [Steinberg] addresses matters that were not raised during pre-complaint counseling or in the formal complaint. Complainant is advised to contact an EEO Counselor if he wishes to pursue further these matters." *Id.*

On July 25, 2013, Steinberg instituted an action in this Court alleging two counts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. *See* ECF No. 1. The Postal Service filed its Motion to Dismiss Plaintiff's Complaint on September 26, 2013, and Plaintiff did not seek amendment until December 5, 2013. *See* ECF No. 4; ECF No. 11. In his proposed Amended Complaint, Steinberg brings a disparate-treatment claim (Count I) and a retaliation claim (Count II) under Title VII. *See* ECF No. 11-1. Steinberg's proposed Amended Complaint contains three significant modifications to his initial filing: (1) the removal of claims for punitive damages;[3] (2) the elimination of claims for racial discrimination;[4] and (3) the addition of allegations that specific

---

[3] Punitive damages are not available against the government pursuant to 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . ."). Plaintiff concedes this point and therefore deletes his request for punitive damages from the proposed Amended Complaint. *See* ECF No. 11 at ¶ 4.

[4] In response to Defendant's Motion to Dismiss [ECF No. 4], Steinberg removed allegations in his Amended Complaint. *Compare* ECF No. 11-1 ¶¶ 15, 19 *with* ECF No. 1 at ¶¶ 15, 19.

benefits were denied to Steinberg on account of his religion, "including but not limited to overtime assignments." *See* ECF No. 11-1 ¶¶15, 25, 27, 30.

## II.  Discussion

The Postal Service seeks to dismiss the Complaint for inadequate service of process and for failure to state a claim.  In addition, the Postal Service contends that Steinberg's Motion to Amend should be denied because the proposed Amended Complaint is futile since the changes incorporated into the Amended Complaint do not correct the problems identified by Defendant's Motion to Dismiss.  The Court considers each argument in turn.

*A. Service of Process*

Rule 4(i) of the Federal Rules of Civil Procedure dictates how complainants may serve the United States and its agencies, corporations, officers, or employees.  *See* Fed. R. Civ. P. 4(i). Critically, in order to serve a United States agency, a party must serve the United States[5] "and also send a copy of the summons and complaint by registered or certified mail to the agency."  Fed. R. Civ. P. 4(i)(2).  Here, Steinberg admits that his service was deficient, conceding that he "neglected to send [a] third certified mail to the [Postal Service] itself."  ECF No. 6 at 2.  The Postal Service argues that this fact requires the entire action to be dismissed since personal jurisdiction cannot be

---

[5] In order to effectuate service upon the United States under Rule 4(i)(1), a party must first deliver copies of the summons and complaint to the United States Attorney for the district where the action is brought (or to an Assistant United States Attorney), or send copies of each by registered or certified mail to the civil-process clerk at the United States Attorney's Office.  Fed. R. Civ. P. 4(i)(1)(A)(i)-(ii).  A party must also send copies of the summons and complaint by registered or certified mail to the Attorney General of the United States at Washington, D.C. Fed. R. Civ. P. 4(i)(1)(B).

established without valid service.[6]

In response, Steinberg contends that his mistake was, at worst, a harmless error since the Postal Service did, in fact, receive notice of service of the Complaint and timely filed its Motion to Dismiss.[7] But the Postal Service insists that it has not waived service of process, and Steinberg has submitted no evidence that he has made an attempt to perfect service.

Under Rule 4(m) of the Federal Rules a party must properly serve a defendant within 120 days of the filing of a complaint. *See* Fed. R. Civ. P. 4(m). Failure to comply with this Rule ultimately results in a dismissal without prejudice. *See id.*; *Guilder v. FBI*, 2011 WL 1988454 at *1-2 (S.D. Fla. Apr. 18, 2011) ("Because [plaintiff] has not complied with the requirements of service on a government agency, his Complaint should be dismissed without prejudice.") (citing *Jackson v. Warden, FCC Coleman-USP*, 259 F. App'x 181, 189 (11th Cir. 2007)). Although Steinberg should have attempted to perfect service as soon as he became aware of his deficiency, the Postal Service has not identified any way in which Steinberg's error has prejudiced it and, as noted, has timely responded to the action, despite Steinberg's failure to make proper service of process. *See De Luca v. Chertoff*, 2007 WL 1050864 at *3 (S.D. Fla. Apr. 4, 2007) ("[I]n light of the fact that the Defendant has knowledge of the action and was not unduly prejudiced by the defects in service, the improper service can be remedied by providing Plaintiff reasonable time to serve Defendant in accordance with Rule 4."). While this Court could require Steinberg to effect proper service,

---

[6] The Postal Service also points out that Steinberg has failed to file affidavits affirming that service was made in accord with Rule 4(l)(1) of the Federal Rules of Civil Procedure. But "[f]ailure to prove service does not affect the validity of service." Fed. R. Civ. P. 4(l)(3).

[7] The Federal Rules also provide a "cure provision." Rule 4(i)(4) states that "[t]he court must allow a party a reasonable time to cure its failure to . . . serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States." Fed. R. Civ. P. 4(i)(4).

because, for the reasons set forth below, the Complaint and proposed Amended Complaint are both fatally defective and cannot be cured, the Court chooses not to provide Steinberg with an opportunity to make proper service.

## B.  Motion to Dismiss and Motion to Amend

### 1.  Legal Standards

#### a. Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure governs the Court's determination of whether to grant Plaintiff's request for leave of court to file his proposed Amended Complaint.  That rule provides that a party seeking to amend its pleading more than twenty-one days after the filing of a motion under Rule 12(b), Fed. R. Civ. P., may do so only by leave of court or by written consent of the adverse party, and leave shall be given freely when justice so requires.  Fed. R. Civ. P. 15(a).

Accordingly, while the decision whether to grant Plaintiff's pending  Motion for Leave to Amend  falls within the discretion of the district court, *Laurie v. Ala. Court of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001), Rule 15(a) limits the Court's discretion by requiring courts to give leave to amend freely when justice so requires.  In the Eleventh Circuit, "Where a plaintiff seeks leave of the court to amend his pleadings, pursuant to Fed. R. Civ. P. 15(a), . . . absent prejudice to the defendant, bad faith or undue delay on the part of the plaintiff, it is an abuse of the court's discretion to deny leave to amend[,]" *Warner v. Alexander Grant & Co.*, 282 F.2d 1528, 1531 (11th Cir. 1987) (citations omitted), unless the proposed amendment would be futile.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) (citations omitted).  Consequently, the Court must provide a justification if it denies a timely filed motion for leave to amend.  *Id.*

### *b. Motion to Dismiss*

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss for failure to state a claim. That rule provides, in relevant part,

> **(b)**   **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(6)**    failure to state a claim upon which relief can be granted; . . .

*Id.* The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009); *Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1256 (11th Cir. 2009); *Cobb v. State of Fla.*, 293 F. App'x 708, 709 (11th Cir. 2008); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.  2007). "[N]aked assertion[s]" bereft of "further factual enhancement" do not suffice.  *Twombly*, 550 U.S. at 555, 557. As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'"  *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562).  On a motion to dismiss, the Court should accept the non-conclusory

allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Syst., Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).

Courts therefore conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 679.  A court should first ask whether the pleading properly asserts "well-pleaded factual allegations," or instead merely asserts "'legal conclusions' [that are] not entitled to the assumption of truth." *Id*. at 679-680 (quoting *Twombly*, 550 U.S. at 555).  If the complaint contains factual allegations that are well pled, the court should assume their veracity, and then move to the next step and ask whether the factual allegations "plausibly give rise to an entitlement to relief." *Id*. at 679.  Thus, where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id*. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted).

2.  Exhaustion

Before bringing a claim for a violation of Title VII in a district court, a federal employee must exhaust his administrative remedies with the EEOC.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008); *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999).  The purpose of this requirement is "to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986).

Because exhaustion is a condition precedent to the bringing of a Title VII suit in district

court,[8] Rule 12(b)(6), as opposed to Rule 12(b)(1),[9] controls, and the plaintiff must generally allege that all conditions precedent have been satisfied. *Goodridge v. Astrue*, 2008 WL 8691093 at *2 (N.D. Ga. Mar. 20, 2008) (citation omitted).   To challenge the plaintiff's completion of the exhaustion requirement, the defendant must, with specificity and particularity, deny performance of a required condition precedent. *Id.* (citations omitted).   If it does so, the plaintiff then must prove that the condition precedent called into question by the defendant has, in fact, been satisfied. *Id.* (citations omitted).

In this case, the proposed Amended Complaint alleges that "Plaintiff has exhausted all administrative remedies available to him." ECF No. 11-1 at ¶ 7.  The Postal Service responds that Steinberg failed to exhaust his administrative remedies with respect to the first four alleged incidents involving religion-based remarks, as he did not timely file his complaint regarding those incidents,

---

[8]As the Northern District of Georgia has explained in *Goodridge v. Astrue*, 2008 WL 8691093 (N.D. Ga. Mar. 20, 2008), a conflict exists within this Circuit regarding whether the exhaustion requirement in a discrimination case involving a federal employee is jurisdictional or a condition precedent. *Compare Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir. 1983) (noting that "all Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than as jurisdictional requirements"), *with Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) ("[a] federal employee must pursue and exhaust her administrative remedies as a *jurisdictional prerequisite*" (emphasis added)) *and Chanda v. Englehard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) ("The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action.").  The line of cases concluding that exhaustion is a condition precedent and not a jurisdictional requirement began in the days of the former Fifth Circuit.  *See Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1007 (11th Cir. 1982) (citations omitted).  In *Jackson*, the Eleventh Circuit reaffirmed its view that exhaustion constitutes a condition precedent, as opposed to a jurisdictional requirement, based in part on *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).  *See id.* at 1003-1010.  When an irreconcilable conflict exists between panel opinions of this Circuit, "the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc." *United States v. Dailey*, 24 F.3d 1323, 1327 (11th Cir. 1994) (citation and quotation marks omitted).  Thus, this Court concludes that exhaustion is a condition precedent.

[9] Rule 12(b)(1) would govern if exhaustion were a jurisdictional requirement.

and he failed to exhaust his administrative remedies concerning his retaliation claim at all, since his administrative complaint did not raise retaliation. The Court reviews each contention below.

Title VII requires federal employees to commence administrative review of any allegedly discriminatory or retaliatory conduct with the appropriate agency within forty-five days of the challenged act. *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citing 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105(a)(1); *Mullins v. Crowell*, 228 F.3d 1305, 1310-11 (11th Cir. 2000)). Failure to do so generally bars the claim, unless the claimant can demonstrate that he "did not know and reasonably should not have [] known that the . . . personnel action occurred." *Id.* (citing *Brown v. Snow*, 440 F.3d 1259, 1264-65 (11th Cir. 2006); 29 C.F.R. § 1614.105(a)(2)); s*ee also* 29 C.F.R. § 1614.105(b)(1) ("Counselors must advise individuals in writing of their rights and responsibilities, including . . . that only the claims raised in pre-complaint counseling (or issues or claims like or related to issues or claims raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency."). But a Title VII claimant may base his action on both his initial EEO charge and on "any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Chanda*, 234 F.3d at 1225 (internal quotation and citation omitted).

### a. The First Four Religion-based Comments

Steinberg first brought the five allegedly religion-based comments to the attention of a counselor through pre-complaint processing on September 25, 2012. *See* ECF No. 4-1 at 1. But the first four comments allegedly occurred on October 7, 2011, December 12 and 20, 2011, and April 8, 2012. None of these dates fall within forty-five days of September 25, 2012. As a result, the

Postal Service argues, any claim by Steinberg regarding these remarks is barred.

Steinberg does not contest the fact that he failed to initiate administrative proceedings within the 45-day period after each comment was made. Instead, he contends that, taken as a whole, the statements constitute a continuing violation. The problem with Steinberg's position arises from the fact that the Supreme Court has flatly rejected the idea that discrete acts, such as the four at issue in this case, may be viewed as a "continuing violation" under a disparate-treatment theory.[10] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-15 (2002). Consequently, as the Postal Service EEO explained in its dismissal order, Steinberg's September 28, 2012, complaint was untimely as it pertained to the first four religion-based remarks, and those claims are now barred. *See* ECF No. 4-1 at 4-5.

### b. Retaliation

Steinberg's retaliation claim (Count II) fares no better. A review of the administrative record reveals no indication whatsoever that Steinberg ever raised his claims of retaliation until he filed the

---

[10] Steinberg does not make a hostile-environment claim. Nor could Steinberg succeed on a hostile-environment claim based solely on the five events described. *See, e.g., McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) ("Although offensive, . . . instances of racially derogatory language alone, extending over a period of more than two years, are too sporadic and isolated to establish that . . . employers' conduct was so objectively severe or pervasive as to alter the terms and conditions of . . . employment"); *MackMuhammad v. Cagle's Inc.*, 379 F. App'x 801, 805-06 (11th Cir. 2010) (supervisor's references to Muslim plaintiff as "Bin Laden" or "Muhammad-man," comments and jokes regarding plaintiff's religious-based refusal to eat pork, and the serving of pork products at company functions insufficient to establish a hostile work environment in violation of Title VII); *Richardson v Dougherty Cnty., Ga.*, 185 F. App'x 785, 790-91 (11th Cir. 2006) (more than fifty references to Seventh Day Adventist plaintiff as "preacher man" by a supervisor, along with additional religious-based offensive comments by coworkers did not constitute a violation of Title VII). Accordingly, the Court does not consider whether the first four comments might not be time-barred under such a theory. Also, *Lapka v. Chertoff*, 517 F.3d 974 (7th Cir. 2008), and *Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007), which Steinberg cites to support his argument that the five acts may be viewed as a continuing violation, both addressed continuing violations in the context of evaluating hostile-environment claims, so they are inapposite to the instant case.

pending lawsuit, even though he should have known of them at the same time that he filed his complaint regarding alleged discrimination, since the events of alleged retaliation occurred in October 2011, December 2011, and January 2012 — all at least nine months before Steinberg filed his administrative complaint.

More specifically, on the administrative complaint that he filed on October 28, 2012, Steinberg checked only the "religion" box in response to the question asking, "[t]ype of [d]iscrimination [y]ou [a]re [a]lleging." *See* ECF No. 4-1 at 1. Steinberg did not check the box marked "[r]etaliation." *See id.* Nor does anything in the body of Steinberg's September 28, 2012, administrative complaint suggest that Steinberg was raising retaliation in his complaint. Instead, the administrative complaint states only,

> Barksdale has made 5 religious comments about my Jewish Heritage. He never talks to other employees about their religions. Ken Foland has been a witness to 4 of the 5 comments. "Enjoy your bagel." "I forgot to bring in jelly donuts for you." (Hannakah) "Brought you Hebrew Nationals" "Did you read from the Haggada" (Passover) Rosh Hashana "This is your New Year why are you here. OH Happy New Year" . . . . During Passover on Sunday 4-8-12, I was sitting with Ken Foland when Barksdale started ranting about Passover dinner, but never mentioned Easter Sunday to Foland. In January of 2012 I contacted my HR office and they assured me at that time the Plant Manager would speak to Barksdale about the comments.

*Id.* at 1-2. These statements allege religion-based discrimination only; none of them even purport to raise retaliation.

And the retaliation that Steinberg asserts in the Complaint before this Court is not a logical outgrowth of the particular religion-based discrimination claims Steinberg made in his September 28, 2012, administrative complaint. To the contrary, according to the Complaint in the pending action, the incidents of retaliation began before the first incident complained of in the administrative

-14-

complaint — more specifically, on October 6, 2011, when Barksdale advised Steinberg that Steinberg was not entitled to work overtime. Yet the September 28, 2011, administrative complaint includes no mention of such allegations. As a result, Steinberg did not exhaust his administrative remedies concerning the retaliation count, and that claim must be dismissed. *See Chanda*, 234 F.3d at 1225 (finding that plaintiff had not exhausted his administrative remedies with respect to a national origin discrimination claim when his EEOC filing reflected only an intent to pursue a retaliation claim).

Steinberg attempts to avoid this result by pointing to an EEOC order of dismissal dated September 13, 2013, dismissing an EEOC complaint that Steinberg filed after the EEOC dismissed his claim regarding the September 28, 2011, complaint on April 30, 2013, and after Steinberg filed the above-captioned action in this Court on July 25, 2013. *See* ECF No. 6-1. In that order of dismissal, the EEOC noted that Steinberg had "alleged that he was retaliated against for prior EEO protected activity when he did not receive overtime assignments . . . in violation of Title VII . . . ." ECF No. 6-1 at 1. The EEOC then dismissed Steinberg's 2013 administrative complaint regarding retaliation because, prior to filing it, Steinberg had initiated the instant case. *See id.* at 2. Noting that Steinberg had not opposed the Postal Service's motion to dismiss the 2013 administrative complaint, the EEOC granted the motion, concluding that it lacked jurisdiction. Accordingly, the EEOC never had the opportunity to rule on Steinberg's retaliation claim, and Steinberg did not exhaust his administrative remedies with respect to his retaliation allegations.

Moreover, even had Steinberg not filed the pending federal case alleging retaliation in violation of Title VII, his second administrative complaint, dated sometime after July 25, 2013,[11]

---

[11]The parties have not made the second administrative complaint a part of the record, so the Court does not know precisely when it was filed. The EEOC order dismissing it, however, notes

would have been untimely.  First, no indication exists in the record that Steinberg ever filed a formal complaint about the alleged retaliation with the Postal Service.  That oversight, in and of itself, dooms Steinberg's retaliation claim.

Second, the proposed Amended Complaint in the instant case asserts that the alleged acts of retaliation occurred in October and December of 2011 and in January of 2012.  Thus, the latest incident alleged happened more than a year and half before Steinberg filed his second administrative complaint.  Even if Steinberg could overcome his failure to file a formal complaint with the Postal Service, assuming that the complaint that was filed with the EEOC was the first time that Steinberg raised his retaliation allegations, the complaint was time barred when it was filed.  Because Steinberg did not exhaust his administrative remedies with respect to his retaliation claim and it is too late to do so now, the retaliation claim must be dismissed, and amendment of the retaliation claim would be futile.

### 3.  The Timely Claim Involving Religious Discrimination

Finally, Steinberg's sole remaining claim of discrimination likewise fails.  Title VII provides that an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ."  42 U.S.C. § 2000e-2.  A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof.  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

Direct evidence of discrimination is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th

---

that it was filed after Steinberg filed the pending matter on July 25, 2013.

Cir. 2004) (citation and internal quotation marks omitted); *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Such direct evidence reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee" and indicates that the adverse employment decision was motivated by the decision-maker's intent to discriminate. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999), *cert. denied*, 529 U.S. 1109 (2000) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)). As a result, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a protected classification, constitute direct evidence of discrimination." *Kilpatrick v. Tyson Foods, Inc.*, 268 F. App'x 860, 862 (11th Cir. 2008). If the evidence merely suggests, but does not prove, a discriminatory motive, it is not direct evidence. *Wilson*, 376 F.3d at 1086. If direct evidence of discrimination is presented, the defendant must "prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination." *Cooper v. S. Co.*, 260 F. Supp. 2d 1295, 1299 (N.D. Ga. 2003) *aff'd*, 390 F.3d 695 (11th Cir. 2004); *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985).

Here, the proposed Amended Complaint makes no allegations of direct evidence of religion-based discrimination. While the proposed Amended Complaint avers that Barksdale made statements relating to religion, the statements that Steinberg alleges, although inappropriate, do not reflect the type of "blatant remarks, whose intent could be nothing other than to discriminate on the basis of [religion]" with respect to premium job assignments and fringe benefits.

In the absence of direct evidence of religion-based discrimination, the Court considers whether the proposed Amended Complaint can establish Steinberg's religion-based-discrimination claim through circumstantial evidence. Evidence that indicates, but does not definitively prove, an

employer's discriminatory motive is deemed circumstantial.  A claim based on circumstantial evidence is analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To set forth a prima facie case of discrimination under the *McDonnell Douglas* framework, a plaintiff must show that (1) he is a member of a protected class, (2) he was subject to an adverse employment action, (3) his employer treated similarly situated employees who were not members of his class more favorably, and (4) he was qualified for the job or benefit at issue.[12]  *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 887 (11th Cir. 2005).  Here, the proposed Amended Complaint fails on three of the four requirements.

First, Steinberg does not adequately allege that he suffered any adverse employment action. To constitute an adverse employment action under Title VII's anti-discrimination clause, an employee must show a "*serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 235 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).  More specifically, an adverse employment action is a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing significant change in benefits." *Hart v. U.S. Att'y Gen.*, 433 F. App'x 779, 781 (11th Cir. 2011) (quoting *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008)) (internal quotation marks omitted).  The asserted impact cannot be speculative, and the plaintiff must show that his employer's action had a tangible adverse effect

---

[12] If the plaintiff establishes a prima facie case, after the motion-to-dismiss stage, the employer then bears the burden of producing evidence demonstrating a legitimate and non-discriminatory reason for the employment action. *Wilson,* 376 F.3d at 1087.  If a defendant meets this burden of production, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to establish that the proffered non-discriminatory reason offered by the defendant was a pretext for discrimination. *Id.*

on his employment.  *Davis*, 235 F.3d at 1239.  This standard is objective, requiring that the employer's action be materially adverse as viewed by a reasonable person under the circumstances. *Id.*

Here, Steinberg asserts only that he "was denied premium job assignments and fringe benefits . . . including but not limited to overtime assignments."  ECF No. 11-1 at ¶ 15.  This allegation, alone, is insufficient, as Steinberg does not specify what types of benefits or job assignments he was purportedly refused due to the alleged discrimination.  The proposed Amended Complaint contains no facts from which the Court may conclude that Steinberg suffered a serious and tangible effect on his employment.  While the Eleventh Circuit has held that "discriminatory alterations of financial benefits may qualify as adverse employment actions," *see Amos v. Tyson Foods, Inc.*, 153 F. App'x 637, 645 (11th Cir. 2005), a blanket assertion that Steinberg was denied benefits does not suffice to establish that he suffered a *material* adverse employment action.  Not every negative action taken by an employer qualifies as "adverse" for purposes of Title VII, *see Doe v. DeKalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998); thus, Steinberg must provide more than vague, generalized assertions to satisfy this element of his claim.

Second, Steinberg's proposed Amended Complaint does not adequately allege that he was treated less favorably than similarly situated employees who were not Jewish.  To establish this prong of a prima facie discrimination claim, a plaintiff must identify a comparator outside of his protected class that is similarly situated to plaintiff "in all relevant respects."[13]  *Wilson v. B/E*

---

[13] The Court recognizes that a Title VII claimant's prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement; thus, the complaint need not establish every element of a prima facie case.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). However, a plaintiff must nonetheless provide "enough factual matter (taken as true) to suggest" a plausible claim of discrimination.  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 976 (11th Cir. 2008).  The proposed Amended Complaint fails to meet this requirement.

*Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).

With respect to this element, Steinberg offers nothing more than a conclusory statement that he was denied benefits "while other non-Jewish employees were not so denied." ECF No. 11-1 at ¶ 15. This is insufficient to withstand dismissal. Indeed, the proposed Amended Complaint contains no mention of any comparator who is alleged to have been treated more favorably than Steinberg, and Steinberg fails to set forth any facts in support of his allegation that he was treated differently than other similarly situated employees. On a motion to dismiss, the presumption of truth afforded to the plaintiff's allegations does not extend to mere legal conclusions. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because the proposed Amended Complaint does not specify how Steinberg was subjected to less favorable treatment, Steinberg's claim for disparate treatment fails.

Finally, Steinberg does not allege that he was qualified for the benefits and assignments that he was purportedly denied. In order to establish a prima face case of discrimination, a plaintiff must allege that he "was qualified for the position or benefit sought." *Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999). The proposed Amended Complaint is completely lacking in this respect, as Steinberg neither states his qualifications nor enumerates the particular benefits at issue.

Because Steinberg's allegations are insufficient to state a claim for disparate treatment, Count I of the proposed Amended Complaint is futile, and Plaintiff's Motion for Leave to File Amended Complaint is therefore denied.

### III.  Conclusion

Accordingly it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Leave to File Amended Complaint [ECF No. 11] is **DENIED**, and Defendant's Motion to Dismiss [ECF No. 4]

is **GRANTED**.  Count II of the proposed Amended Complaint is barred for failure to exhaust administrative remedies.  However, because the Court dismisses Count I based on the insufficiency of the pleadings, the Court will permit Plaintiff until **April 22, 2014**, to amend Count I only, should he wish to do so.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 7th day of April 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record